IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In the Matter of:<br>ADAM L. PEEPLES and JENNIFER K.<br>PEEPLES,<br><br>     Debtors. | **MEMORANDUM DECISION AND<br>ORDER AFFIRMING THE<br>BANKRUPTCY COURT'S ORDER AND<br>JUDGMENT** |
| ADRIAN J. LEE, an individual, and ANGELA<br>LYNN NOYES LEE, an individual,<br><br>     Plaintiffs/Appellants/Cross-Appellees,<br>v.<br><br>SCOTT J. McCARDLE, an individual, and<br>SCOTT J. McCARLE, trustee of the JACK<br>AND RUTH McCARDLE TRUST,<br><br>     Defendants/Appellees/Cross-Appellants. | Case No. 2:16-cv-808-JNP-PMW<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Paul M. Warner |

Before the court are an appeal and cross-appeal from two orders of the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court"): (1) the Order and Judgment Denying Plaintiffs' Motion for Summary Judgment, Granting Defendants' Motion for Summary Judgment, and Denying Defendants' Motion for Attorney's Fees (the "Order"), and (2) the Order Denying Defendants' Motion for Sanctions (the "Sanctions Order"). Appellants Adrian and Angela Lee appeal the Bankruptcy Court's denial of their motion for partial summary judgment and the grant of Appellees' motion for summary judgment. Appellee, Scott McCardle, in his individual capacity and in his capacity as the trustee of the Jack and Ruth McCardle Trust (the "Trust"), cross-appeals the denial of his motion for attorney's fees and the denial of his motion for sanctions. The court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

After considering the record before it, the applicable law, and the parties' arguments in their briefs and at the February 16, 2017 hearing on the matter, the court issues this Memorandum Decision and Order AFFIRMING the Bankruptcy Court in all respects.

## FACTUAL AND PROCEDURAL BACKGROUND

The Lees have two state court judgments against Adam and Jennifer Peeples, the debtors in the underlying bankruptcy case. As part of their effort to collect on these judgments, the Lees obtained writs of garnishment directed to Mr. McCardle as trustee of the Trust. The writs of garnishment concerned property that the Lees allege belongs to Mr. Peeples as a beneficiary of the Trust. In response to interrogatories on the writs of garnishment, the Trust denied holding any of Mr. Peeples's property, except for a few inconsequential household items. The Trust maintains that Mr. Peeples's beneficial interest in the Trust was terminated prior to the garnishment proceedings.

The Trust was created when Jack and Ruth McCardle executed a Declaration of Trust on May 11, 1991. Jack and Ruth were the trustees and primary beneficiaries of the Trust. Mr. McCardle was to become the trustee upon the death of both Jack and Ruth. In 1993, Jack and Ruth executed a memorandum amending the Trust to provide that upon their deaths, the Trust would be distributed 1/3 to Mr. McCardle, 1/3 to Patti Ann Peeples, and 1/3 divided equally to Jack and Ruth's grandchildren, one of whom is Mr. Peeples. Jack McCardle died on February 1, 2008. On September 17, 2008, Ruth McCardle executed a memorandum again amending the Trust (the "2008 Memorandum") to provide that after paying debts, the Trust assets would be divided equally between Mr. McCardle and Patti Ann Peeples, thus eliminating the grandchildren's beneficial interests. Ruth McCardle died in 2009. At that time, Mr. McCardle

became trustee and was obliged to distribute the Trust assets according to the terms of the Trust, which he did.

After the Trust denied holding any of Mr. Peeples's property, Mr. Lee filed an action in the Third Judicial District Court for the State of Utah (the "State Court Lawsuit") against Mr. McCardle, in both his individual capacity and as trustee of the Trust alleging claims of undue influence, rescission based on mistake, and two counts of breach of fiduciary duty. Mr. Lee sought an order rescinding the 2008 Memorandum and "compensatory damages," including "the amount of any overdue distributions that would have otherwise been made to Adam L. Peeples in the absence of the [2008 Memorandum] . . . up to the total amount of [the writs of garnishment,]" and "punitive damages in the amount of three (3) times the amount of compensatory damages" for breach of fiduciary duty by Mr. McCardle.

Mr. McCardle filed a motion for summary judgment in the State Court Lawsuit. On March 23, 2014, the state court entered an order granting Mr. McCardle's motion for summary judgment, awarding attorney's fees and costs to Mr. McCardle, and dismissing Mr. Lee's claims. The state court order stated that it did not constitute final judgment and instructed Mr. McCardle to submit a declaration of his attorney's fees and costs. Mr. McCardle submitted a Declaration of Attorney Fees and Costs and Proposed Final Judgment on March 25, 2014, and a Supplemental Declaration of Fees and Costs on April 11, 2014.

The Peeples filed their bankruptcy petition on April 17, 2014. Five days later, Mr. Lee filed a notice of bankruptcy stay in the State Court Lawsuit and informed Mr. McCardle's counsel that he believed the State Court Lawsuit was automatically stayed under 11 U.S.C. § 362(a)(1). On May 7, 2014, Mr. McCardle filed an objection to Mr. Lee's notice of stay. Mr. Lee responded to Mr. McCardle's objection that same day, but the state court nevertheless lifted the

stay. On May 29, 2014, the state court entered final judgment in favor of Mr. McCardle and an award of attorney's fees and costs against Mr. Lee (the "State Court Judgment"). The State Court Judgment confirmed the earlier order granting Mr. McCardle's motion summary judgment, dismissed Mr. Lee's claims with prejudice, and entered attorney's fees and costs to Mr. McCardle in the principal judgment amount of $41,889.00 and "all further attorney [sic] fees and costs incurred by [Mr. McCardle] in collecting the Principal Judgment Amount."

On May 22, 2014, the Lees commenced an adversary proceeding in the Bankruptcy Court seeking a declaratory judgment that the State Court Judgment was void *ab initio*, as well as damages and sanctions against Mr. McCardle and his attorneys for violating the stay. The Lees argued that when the Peeples filed their bankruptcy petition, the State Court Lawsuit was automatically stayed under 11 U.S.C. § 362(a)(1). The Lees thereafter filed a motion for partial summary judgment on their claim for declaratory relief. Mr. McCardle filed a cross-motion for summary judgment seeking dismissal of the adversary proceeding on the basis that the State Court Lawsuit was not subject to the automatic stay provision of §362(a)(1). Mr. McCardle also filed a motion for sanctions under Fed. R. Bankr. P. 9011 and a motion for attorney's fees, arguing that he was entitled to fees based on (1) the bad faith exception to the American Rule; (2) the Utah Uniform Trust Code; and (3) the State Court Judgment.

On July 14, 2016, the Bankruptcy Court denied the Lees' motion for partial summary judgment, granted Mr. McCardle's motion for summary judgment, and denied Mr. McCardle's motion for attorney's fees. The Bankruptcy Court separately denied Mr. McCardle's motion for sanctions. The Lees filed a notice of appeal on July 18, 2016. Mr. McCardle filed his notice of cross-appeal on August 1, 2016.

**STANDARD OF REVIEW**

4

When reviewing the summary judgment ruling of a bankruptcy court, the district court reviews the case *de novo*, applying the same legal standard used by the bankruptcy court, namely Fed. R. Civ. P. 56(c). *In re Stat–Tech Int'l Corp.*, 47 F.3d 1054, 1057 (10th Cir.1995). Under Fed. R. Civ. P. 56(c), "[s]ummary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* Additionally, the court "may affirm the [bankruptcy] court for any reason supported by the record." *In re Myers*, 362 F.3d 667, 674 n.7 (10th Cir. 2004).

In reviewing a bankruptcy court's denial of a motion for attorney's fees, the court reviews the bankruptcy court's decision "for an abuse of discretion, but any statutory interpretation or other legal analysis underlying the [bankruptcy] court's decision concerning attorney's fees is reviewed *de novo*." *In re Taylor*, 478 B.R. 419, 423 (B.A.P. 10th Cir. 2012), *aff'd*, 737 F.3d 670 (10th Cir. 2013). Further, any factual findings of the bankruptcy court are reviewed for clear error. *In re Hodes*, 402 F.3d 1005, 1008 (10th Cir. 2005).

## DISCUSSION

## I.  If An Action Is Dependent On (Or Based Upon) A Claim Against The Debtor, The Action Falls Within The Scope Of Section 362(A)(1).

The Lees seek a declaration that the State Court Lawsuit was subject to the automatic Stay defined by the Bankruptcy Code, 11 U.S.C. § 362(a)(1). Specifically, Mr. Lee argues that the State Court Lawsuit was an "action . . . to recover a claim against the debtor" and should have been stayed upon the Peeples's bankruptcy filing. The Bankruptcy Court held that the State Court Lawsuit did not fall within the scope of Section 362(a)(1) as an action to recover a claim against the debtor. The Lees argue that the Bankruptcy Court erred by (1) failing to properly interpret the scope of Section 362(a)(1), and (2) failing to properly characterize the nature of the State Court Lawsuit. This court disagrees with the Lees in both respects.

### A. The Bankruptcy Court did not Err in Interpreting the Scope of 11 U.S.C. § 362(a)(1).

11 U.S.C. § 362(a)(1) provides that when a debtor files for bankruptcy, the filing operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or other action . . . against the debtor . . . or to recover a claim against the debtor that arose before the commencement of the" bankruptcy filing. The scope of the automatic stay is a matter of statutory interpretation. When the court interprets a statute, "the starting point is always the language of the statute itself. If the language is clear and unambiguous, the plain meaning of the statute controls." *In re Stephens*, 704 F.3d 1279, 1283 (10th Cir. 2013) (citation omitted). But if "the text is ambiguous—i.e., 'capable of being understood by reasonably well-informed persons in two or more different senses'—we must inquire further to discern Congress's intent." *Id.* (quoting *United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir.2002)).

Neither party argues that the language of the statute is ambiguous, and the court agrees. Section 362(a)(1) states that a bankruptcy filing stays the continuation or commencement of two categories of actions: (1) an action against the bankruptcy debtor, and (2) an action to recover a claim against the bankruptcy debtor. The first category of actions implicated by Section 362, actions against the debtor, is not at issue here. The question before the court is what constitutes an action to recover a claim against a bankruptcy debtor.

Whether a particular action is an action to recover a claim against a bankruptcy debtor must be determined using objective criteria. The automatic stay serves a dual purpose: to "protect[] debtors from harassment" and to "ensure[] that the debtor's assets can be distributed in an orderly fashion, thus preserving the interests of the creditors as a group." *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009) (quoting *Price v. Rochford*, 947 F.2d 829, 831 (7th Cir.1991)). These objectives can be realized only if litigants know whether their action will violate the stay

or not. The Lees previously argued in the Bankruptcy Court and on appeal that the applicability of the stay was dependent on the subjective intent of the party initiating an action. But they abandoned that position at oral argument, conceding that such an inquiry would not give parties the necessary notice of whether their action fell within the purview of the automatic stay.

After abandoning their subjective intent argument, the Lees now argue that an action falls within the scope of the automatic stay if it "objectively manifests a purpose to recover a claim against the debtor as determined by a totality of the circumstances and as measured at the inception of the action." Mr. McCardle counters that it is the objective nature of an action that determines whether it is an action to recover a claim against a debtor. Mr. McCardle reasons that the automatic stay applies only to actions against non-debtors "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *In re Biorge*, No. 10-23318, 2011 WL 1134109, at *2 (Bankr. D. Utah Mar. 28, 2011).

A debtor does not need to be a party to an action for it to qualify as an action to recover a claim against a debtor. *See In re Colonial Realty Co.*, 980 F.2d 125, 131 (2nd Cir. 1992) ("Section 362(a)(1) provides that actions 'against the debtor' or 'to recover a claim against the debtor' are subject to the automatic stay. The latter category must encompass cases in which the debtor is not a defendant; it would otherwise be totally duplicative of the former category and pure surplusage."). One example of such an action is when there has been a fraudulent transfer of property from a debtor to a third party. In *In re Colonial Realty Co.*, the Second Circuit held that an action against non-debtors to recover property that had been fraudulently transferred by the debtors was "properly regarded as undertaken 'to recover a claim against the debtor.'" *Id.* at

131–32. The Second Circuit explained that although "a fraudulent transfer action may be an action against a third party, it is also an action 'to recover a claim against the debtor.' Absent a claim against the debtor, there is no independent basis for the action against the transferee." *Id.* at 132 (quoting *In re Saunders*, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989)).

Foreclosure actions against non-debtors are also subject to the automatic stay "when the debtor has a 'leasehold' or 'possessory' interest in the property and the debt sought to be satisfied out of the property is that of the debtor." *Valley Transit Mis of Ruidoso, Inc. v. Miller*, 928 F.2d 354, 356 (10th Cir. 1991) (citing *In re Pioneer Valley Indoor Tennis Center, Inc.*, 20 B.R. 884, 885 (Bankr. D. Mass.1982), and *In re Barksdale*, 15 B.R. 731, 732 (Bankr. W.D. Va. 1981)). In *Miller*, for example, the Tenth Circuit held that the foreclosure claim was stayed by Section 362 because the foreclosure claim "was based upon a debt incurred by" the debtor.

These examples flesh out the meaning of "an action to recover a claim against a debtor." Simply put, if the action is dependent on (or based upon) a claim against the debtor, the action falls within the scope of Section 362(a)(1). That determination must be made at the inception of the action. *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 373 (10th Cir. 1990) (quoting *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel*, 682 F.2d 446, 449 (3rd Cir. 1982) ("[W]hether a case is subject to the automatic stay must be determined at its inception.").

Whether an action is dependent on (or based upon) a claim against the debtor at its inception is best determined by looking at the allegations of the complaint and the relief sought therein. Going beyond the complaint to analyze the totality of the circumstances overcomplicates the issue. The Lees argue that the only way to truly determine the objective nature of an action is to look at the facts and circumstances leading up to the filing of the action, and what they suggest is the motivation for the case. The court disagrees. Examining what is in the complaint will

provide the litigants and the court with the information necessary to determine whether a case constitutes an action to recover a claim against the debtor.

**B. The State Court Lawsuit Was Independent Of The Lees' Claim Against Mr. Peeples.**

The facts regarding the State Court Lawsuit are not in dispute. Mr. Lee filed the case against Mr. McCardle, in both his individual capacity and as trustee of the Trust, alleging claims that Mr. McCardle unduly influenced his mother, that the 2008 Memorandum should be rescinded because of Ruth McCardle's mistaken understanding, and that Mr. McCardle had breached his fiduciary duty. Mr. Lee sought an order rescinding the 2008 Memorandum, "compensatory damages," including "the amount of any overdue distributions that would have otherwise been made to Adam L. Peeples in the absence of the [2008 Memorandum] . . . up to the total amount of [the writs of garnishment,]" and "punitive damages in the amount of three (3) times the amount of compensatory damages" for breach of fiduciary duty by Mr. McCardle. Despite the Lees' efforts to explain the purpose of their claims, the State Court Lawsuit was independent of their claims against the Mr. Peeples. It therefore was not subject to the automatic stay.

The claims that Mr. Lee asserted in the State Court Lawsuit were simply not dependent upon the Lees' claims against Mr. Peeples. Although Mr. Lee referenced the writs of garnishment in his prayer for relief, the causes of action alleged to support his request for that relief do not relate to the Lees' claims against Mr. Peeples. Indeed, even in the absence of the

Lees' claims against Mr. Peeples, there would still be an independent basis for an action against the trustee for undue influence, mistaken understanding, and/or breach of fiduciary duty.[1]

An objective analysis of the State Court Lawsuit reveals that it was an action to recover Mr. Peeples's (and the other Trust beneficiaries') claims against the Trust and its trustee, Mr. McCardle. It was not an action to recover any claim against Mr. Peeples. In his amended complaint in the State Court Lawsuit, Mr. Lee alleged that he was "the legal successor in interest" of Mr. Peeples, and was thus a "beneficiary" of the Trust. If that allegation were true, then Mr. Lee was simply standing in Mr. Peeples's shoes in an action to recover a claim against Mr. McCardle and the Trust. If that allegation were not true, then Mr. Lee lacked standing to assert Mr. Peeples's claims against Mr. McCardle and the Trust. One thing remains clear under either alternative. Although Mr. Lee did have a claim against Mr. Peeples, the State Court Lawsuit was not an action to recover on that claim. Rather, it was an action to recover claims belonging to the beneficiaries of the Trust.

## C. The Lees' Appeal Is Not Frivolous.

Mr. McCardle argues that the Lees' appeal to this court is frivolous and that he and the Trust are entitled to damages pursuant to Fed. R. Bank. P. 8020(a). "If the district court . . . determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. Bank. P. 8020(a). Mr. McCardle argues that the Lees' appeal is frivolous because their arguments are neither supported by the language of the statute at issue nor by common sense. The court disagrees. There is very little case law touching on the scope and

---

[1] Of course, an action against the trustee for these causes of action would need to be brought by an appropriate party with standing to bring such claims. As the state court held, Mr. Lee was not the proper party to bring those claims.

application of the automatic stay, particularly the clause regarding an action to recover a claim against the debtor. The Lees made colorable arguments for the extension of existing law or establishment of new law on the subject. Accordingly, Mr. McCardle's request is denied.

In summary, the court concludes that the State Court Lawsuit was not a judicial action or proceeding against the debtors. The State Court Lawsuit likewise was not an action to recover a claim against the debtors; rather, it was an action to recover a claim against the Trust and its trustee for the benefit of a potential beneficiary of the Trust. Mr. Lee sought summary judgment on his request for a declaration that the State Court Lawsuit was stayed by the automatic stay. His motion for summary judgment was appropriately denied by the Bankruptcy Court and the Bankruptcy Court correctly granted summary judgment against the Lees on all of their claims in the adversary proceeding.

## II.  The Bankruptcy Court Did Not Err In Denying Mr. McCardle's Request For Attorney's Fees.

On cross-appeal, Mr. McCardle challenges the Bankruptcy Court's denial of his motion for attorney's fees and motion for sanctions. Mr. McCardle raised four arguments supporting his request for attorney's fees, each of which was rejected by the Bankruptcy Court. The court finds that the Bankruptcy Court did not abuse its discretion in denying Mr. McCardle's request for fees.

### A.  Utah Code § 75-7-1004(1)

Mr. McCardle argues that he is statutorily entitled to an award of fees under the Utah Uniform Trust Code. Specifically, Mr. McCardle claims he is entitled to fees under Utah Code § 75-7-1004(1), which provides that "[i]n a judicial proceeding *involving the administration of a trust*, the court may, as justice and equity may require, award costs and expenses, including

reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." (emphasis added).

The Bankruptcy Court held section 75-7-1004 to be inapplicable because the question of law addressed in the underlying adversary proceeding focused on the federal law issues of the scope of the automatic stay, and whether or not the stay was violated. Because the adversary proceeding did not address questions involving the administration of the Trust, the Bankruptcy Court reasoned that section 75-7-1004 did not support an award of attorney's fees. Mr. McCardle argues that this was error because the issues related to the stay gave rise to a number of state law issues involving trust administration. In particular, Mr. McCardle argues that the action that the Lees claimed violated the stay—the entry of final judgment in the State Court Lawsuit, including the amount of attorney's fees owed to the Trust—was an action concerning administration of the Trust. The court is not persuaded. Even if the act that allegedly violated the stay were an action of trust administration, the adversary proceeding before the Bankruptcy Court did not involve trust administration.

Because the phrase "trust administration" is not defined in the Uniform Trust Code, the court gives the phrase its "usually accepted meaning." *O'Keefe v. Utah State Retirement Bd.*, 956 P.2d 279, 281 (Utah 1998). "Administration" is variously defined as "the management and disposal under court authority of the estate of a deceased person," "the management of an estate," and "the management of assets held in a trust." *Legal definition of administration*, Merriam-Webster, https://www.merriam-webster.com/dictionary/administration (accessed Mar. 24, 2017).

The adversary proceeding before the Bankruptcy Court sought a declaration that the provisions of the automatic stay applied to the State Court Lawsuit and an award of damages for

the violating the stay. The legal questions before the Bankruptcy Court dealt solely with the scope of the automatic stay provision of Section 362 and whether that stay was violated. It did not involve "trust administration" as that term is usually understood. Accordingly, the Bankruptcy Court did not abuse its discretion in denying Mr. McCardle's request for attorney's fees under the Utah Uniform Trust Code, Utah Code § 75-7-1004(1).

## B.  The Bad Faith Exception to the American Rule

Mr. McCardle also seeks an award of attorney's fees under the bad faith exception to the American Rule. The so-called American Rule refers to the general principle that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Kornfeld v. Kornfeld*, 393 F. App'x 575, 578 (10th Cir. 2010) (quoting *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 243 (2010)). There are, however, exceptions to this general rule. Mr. McCardle relies on the exception that permits assessment of fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (citation omitted). The bad faith exception draws from "a court's inherent power to police itself" and serves "the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." "[T]he essential element in triggering the award of fees is . . . the existence of 'bad faith' on the part of the unsuccessful litigant." *Kornfeld v. Kornfeld*, 393 F. App'x 575, 578 (10th Cir. 2010) (citation omitted).

The Tenth Circuit has ruled that "[a] party acts in bad faith only when the claim brought is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Sterling Energy, Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435

13

(10th Cir. 1984) (internal quotation marks and citation omitted).  Further, the bad faith exception is construed narrowly and "may be resorted to only in exceptional cases . . . when there is clear evidence that challenged actions are taken" in bad faith. *Fed. Deposit Ins. Corp. v. Schuchmann*, 319 F.3d 1247, 1250 (10th Cir. 2003) (internal quotation marks and citation omitted).

In ruling on Mr. McCardle's motion for sanctions, the Bankruptcy Court found that none of the claims and legal contentions brought by the Lees were unwarranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law. It repeated that determination in analyzing the request for attorney's fees under the bad faith exception and concluded that the pleadings and actions of the Lees do not fit the narrow exception to the American Rule.

Mr. McCardle argues that the Bankruptcy Court abused its discretion in refusing to grant its request for fees pursuant to the bad faith exception because it did not take into account the Lees' subjective intent in bringing the case before the Bankruptcy Court. Mr. McCardle argues that the Lees did not bring the case in order to prevail in the litigation, but rather to teach a lesson to Mr. McCardle. In support of this argument, Mr. McCardle points to certain correspondence from Mr. Lee to Mr. McCardle and his counsel that was presented the Bankruptcy Court. This court has likewise reviewed these correspondences and does not find that the Bankruptcy Court abused its discretion in denying Mr. McCardle's request for attorney's fees under the narrow bad faith exception to the American Rule.

### C.  The State Court Judgment

Mr. McCardle also argues that he is entitled to attorney's fees in defending the adversary proceeding because the state court previously awarded him attorney's fees and indicated that the award could be augmented by the costs of collection. Because the Lees' claims in the

Bankruptcy Court proceeding and on this appeal were designed to nullify the State Court Judgment, Mr. McCardle asserts that he is entitled to recover the attorney's fees he incurred in defending the adversary proceeding. The court disagrees.

The State Court Judgment allows for augmentation "by declaration submitted by [Mr. McCardle], to encompass and include all further attorney fees and costs incurred by [Mr. McCardle] in collecting the Principal Judgment Amount." While the adversary proceeding before the Bankruptcy Court was not commenced in an effort to collect the State Court Judgment, Mr. McCardle argues that he is nevertheless entitled to fees because his actions in defending the validity of the judgment were necessary to preserve the validity of that judgment. Mr. McCardle may be correct, but the Bankruptcy Court was not the appropriate forum in which to assert that argument. If Mr. McCardle is correct, the fees would be appropriately awarded by the state court, not by the Bankruptcy Court. For these reasons, the Bankruptcy Court did not abuse its discretion in denying Mr. McCardle's request for fees pursuant to the State Court Judgment.

### D.  Rule 9011

In his motion for sanctions, Mr. McCardle sought an award of fees pursuant to Fed. R. Bankr. P. 9011, the bankruptcy corollary to Fed. R. Civ. P. 11. Rule 9011 provides that when an attorney or party presents "a petition, pleading, written motion, or other paper" to the court, he represents to the court that:

 (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Bankr. P. 9011(b).

The decision to deny a request for sanctions under Rule 9011 is a matter within the Bankruptcy Court's discretion. *In re Notary*, 547 B.R. 411, 422 (Bankr. D. Colo. 2016) (citing *Brown v. Eppler*, 725 F.3d 1221, 1228 (10th Cir.2013) ("This court reviews the district court's refusal to impose Rule 11 sanctions for abuse of discretion.")). In deciding whether to impose Rule 11 sanctions, a trial court must apply an objective standard—whether a reasonable and competent attorney would believe in the merit of an argument. *White v. General Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990). In its Order Denying Defendants' Motion for Sanctions pursuant to Rule 11, the Bankruptcy Court found that none of the claims and legal contentions brought in the Lees' Amended Complaint were unwarranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law within the meaning of Fed. R. Bank. P. 9011(b)(2). This court has likewise determined that the Lees' claims and arguments were not frivolous, nor were they brought in bad faith. Accordingly, the Bankruptcy Court did not abuse its discretion in denying Mr. McCardle's motion for sanctions under Rule 9011.

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the Bankruptcy Court in all respects. SIGNED March 30, 2017.

BY THE COURT

Jill N. Parrish
United States District Court Judge